```
                  UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLUMBIA
-----------------------------X

UNITED STATES OF AMERICA

           v.                    Criminal Case No. 02-388-2

SALVATORE MANCUSO GOMEZ,

        Defendant

-----------------------------X

                                Washington, D.C.
                                 Tuesday, October 14, 2008
                                      2:07 p.m.


                    TRANSCRIPT OF PLEA HEARING
             BEFORE THE HONORABLE ELLEN SEGAL HUVELLE
                  UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Government:  Robert Spelke, AUSA
                     Robert John Raymond, AUSA
                     U.S. DEPARTMENT OF JUSTICE
                     145 N St, NE
                     2nd Floor, East Wing
                     Washington, DC 20530
                     (202) 514-8708




For the Defendant:   Joaquin G. Perez, Esq.
                     6780 Coral Way, Suite 200
                     Miami, FL 33155
                     (305) 261-4000




Court Reporter:      Lisa Walker Griffith, RPR
                     U.S. District Courthouse
                     Room 6507
                     Washington, D.C.  20001
                     (202) 354-3247
```

1                          **P R O C E E D I N G S**

2              THE DEPUTY CLERK:  This is Criminal Case 02-388-2,

3    United States of America versus Salvatore Mancuso Gomez.

4              Would counsel please step to the podium and identify

5    yourselves for the record?

6              MR. SPELKE:  Good afternoon, Your Honor.  Robert

7    Spelke for the United States.  With me is Robert Raymond and

8    DEA Special Agent Kevin Shribner.

9              THE COURT:  Good afternoon.

10             MR. PEREZ:  Good afternoon.  Joaquin Perez appearing

11   on behalf of Salvatore Mancuso Gomez, who is present in court

12   and aided by an interpreter.

13             (The interpreter, Angeles Estrada, was sworn.)

14             THE COURT:  Okay.  Good afternoon.  I have signed

15   the order to seal.  This has been sealed before, but just to

16   make sure.

17             MR. SPELKE:  Your Honor, it is not just to seal the

18   proceedings, but also to seal the plea agreement.

19             THE COURT:  Right.  Correct.

20             MR. SPELKE:  Okay.

21             THE COURT:  I've read the new papers and I still

22   have a question or two.

23             MR. SPELKE:  And, Your Honor, just so that the Court

24   is clear, there have been two changes that I just want to make

25   the Court aware of before we start.  I have a copy here for

1    the Court as well with the changes, and I have noted the

2    changes with an orange sticky here.

3              THE COURT:  Okay.  Because I read whatever came to

4    me recently.

5              MR. SPELKE:  Yes, Your Honor, I understand.  The

6    changes were made actually today and over the weekend because

7    Mr. Perez and I have continued our negotiations.

8              THE COURT:  Okay.  Which document should I look at?

9              MR. SPELKE:  The plea agreement, Your Honor,

10   paragraph number eight.  We have agreed, Your Honor, rather

11   than a two-level increase for drug quantity as extraordinary,

12   we agreed to reduce that by one level so that it is a

13   one-level increase resulting ultimately in a base offense

14   level of 42 rather than 43.

15             THE COURT:  Forty-two instead of 43.  That's after

16   you have taken off the --

17             MR. SPELKE:  The three levels for acceptance of

18   responsibility.  That is correct, Your Honor.

19             THE COURT:  Okay.  Is there another change?

20             MR. SPELKE:  Yes, Your Honor.  It's going to be a

21   new paragraph actually, paragraph 36, which I will present to

22   the Court.  And I think the Court can have an opportunity to

23   read it first, then we can explain it.

24             THE COURT:  It is not attached here?

25             MR. SPELKE:  No.

 1          THE COURT:  It is a new replacement for 36?

 2          MR. SPELKE:  It will be a new paragraph 36, yes,

 3  Your Honor.  And that is the Court's copy, the Court can keep

 4  that copy.

 5          THE COURT:  All right.  The parties understand

 6  paragraph 36?  I'm sorry, what is the difference?

 7          MR. SPELKE:  Your Honor, that is a whole new

 8  paragraph.

 9          THE COURT:  Okay.  Thirty-six, I see.  Okay.  So

10  you've inserted, and 36 becomes 37, all right.

11          This is now my copy?

12          MR. SPELKE:  Yes, that is correct, Your Honor.

13          THE COURT:  But where will you insert your new 36?

14  Wait a minute.

15          MR. SPELKE:  What I did, Your Honor, was I inserted

16  a new paragraph for 36 and then I made your 36, 37, your 37,

17  38, and so on down.

18          THE COURT:  Right.  I'm just saying I was already

19  given a copy.

20          MR. SPELKE:  Oh, I'm sorry, Your Honor, I didn't

21  realize that you had the original there.  That's your copy as

22  well, Your Honor.  Yes, I'm sorry, I apologize.  I didn't

23  realize that you had the original up there.  Okay.  Then that

24  is correct, Your Honor.

25          THE COURT:  Okay.  I'll give back this.

1          MR. SPELKE:  No, you can keep that, Your Honor, for

2     whatever purposes you need it.

3          THE COURT:  All right.  And I wanted to make sure I

4     understood again how, if at all, you are resolving the matter

5     of the sentence carries a maximum of life.  And you can't get

6     life here.

7          MR. SPELKE:  Your Honor, it is the United States

8     Government that agrees with Colombia, upon extradition that

9     the United States Government will not ask for life.  However,

10    Your Honor, that does not bind this Court.  And in effect what

11    it means, Your Honor, is that Mr. Mancuso is subjected to the

12    possibility of a life sentence.

13          Now, again, the United States Government gave

14    assurances that the U.S. Government would not ask for a life

15    sentence.  However, Your Honor, it does not bind this Court.

16    He is still subject to a life term.

17          THE COURT:  Is that clear to both sides?  Because I

18    have to give him warnings consistent with his potential

19    exposure in terms of sentence.

20          MR. PEREZ:  Yes, it is.  I think that the

21    distinction being that the Court can do whatever you believe

22    is appropriate.  However, the United States, in order to

23    comply with the terms of the treaty, will not ask that a

24    sentence of life be imposed.  But I will ask that a sentence

25    of a term of years be imposed.  In a recent case I think

1  before another Court, they suggested that the term be 60

2  years, which is the equivalent of the maximum permitted under

3  Colombian law.

4          THE COURT:  It is the equivalent of what?

5          MR. PEREZ:  The maximum permitted under Colombian

6  law.  But I imagine that the Court can do whatever you feel is

7  necessary, but there was proceedings in a case here in

8  Washington, D.C. where the recommendation was made that the

9  term be, that it should not exceed the maximum authorized

10  under Colombian law.

11          THE COURT:  And which case was that?

12          MR. PEREZ:  The Commander Sonia case.  It was before

13  Judge --

14          MR. SPELKE:  Robertson.

15          THE COURT:  And was there an ultimate sentence yet?

16          MR. PEREZ:  The sentence was 20 years.

17          MR. SPELKE:  Sixteen.

18          MR. PEREZ:  Sixteen years.  So this is only in the

19  hypothetical event that the Court wishes to impose the maximum

20  sentence.

21          THE COURT:  All right.  I think we're ready to

22  proceed.

23          Have you had a chance to go over this carefully with

24  your client?

25          MR. PEREZ:  Yes, I have.  We have spent a

1    significant amount of time going over it in Spanish, and we

2    have had a chance to review it at length.

3               THE COURT:  And have you, to your satisfaction and

4    to his, explained the fact that he is giving up his appellate

5    rights?

6               MR. PEREZ:  I have.  I have explained to him that he

7    has a right to an appeal and he has, as part of this

8    agreement, agreed to waive that right.

9               THE COURT:  The only way he can appeal the sentence

10   here is if the government appeals.

11              MR. PEREZ:  That is correct.  We are familiar with

12   that.  And by way of the conversations --

13              THE COURT:  The only appeal he could take here is if

14   I exceeded the maximum, and the maximum here is life.  So

15   that, effectively, there is no appeal.

16              MR. PEREZ:  Mr. Mancuso was explained that and he

17   agrees to the terms of the agreement.

18              THE COURT:  All right.  That's fine.  Okay.  We will

19   have him come forward and be put under oath.

20              (The defendant was placed under oath.)

21              THE DEPUTY CLERK:  Please state your name for the

22   record.

23              THE DEFENDANT:  My name is Salvatore Mancuso Gomez.

24              THE COURT:  Is it Mr. Gomez?

25              MR. PEREZ:  It is Mr. Mancuso.

1          THE COURT:  Okay.  Mr. Mancuso, I am going to ask a

2     series of questions.  If you don't understand the question,

3     you can say so and you could ask your lawyer or me for an

4     explanation.  You must answer truthfully because in this

5     proceeding if you lie or make a false statement, you can be

6     prosecuted for perjury or false statements.  So it is

7     important that you understand and answer truthfully.

8          Also under this agreement, if you should attempt to

9     withdraw your plea down the road, everything you say here

10    today can be used against you.  And the government can use it

11    to make a case against you.  So you have to understand that

12    when you talk about the facts of this case, that you, these

13    statements, assuming the Court accepts your plea, can be used

14    against you if, in fact, you were to be prosecuted by the

15    government.

16          Do you understand that?

17          THE DEFENDANT:  Yes, Your Honor, I do understand.

18          THE COURT:  Now, how old are you?

19          THE DEFENDANT:  I am 44 years old, Your Honor.

20          THE COURT:  And how far did you go in school?

21          THE DEFENDANT:  I had completed the higher level

22    schooling.

23          THE COURT:  College or university?

24          THE DEFENDANT:  Yes, that's university studies, Your

25    Honor.

1          THE COURT:  Do you read or write in English or

2  Spanish only?

3          THE DEFENDANT:  Only Spanish.  I'm learning English,

4  Your Honor.

5          THE COURT:  And you were born in Colombia?

6          THE DEFENDANT:  Yes, I did, Your Honor.

7          THE COURT:  And have all of these documents been

8  translated into Spanish, the plea agreement and the factual

9  statement?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  And you have read them in Spanish and

12  gone over them with your counsel?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And you have signed -- did he sign the

15  Spanish as well as the English?

16          MR. PEREZ:  No, he signed the English, but it was

17  only after I read to him the plea agreement in Spanish.

18          THE COURT:  But did he have the ability to read the

19  plea agreement too in Spanish?

20          MR. PEREZ:  No, it was translated by me and he then

21  endorsed the plea by signing it.  The agreement was not

22  prepared in Spanish, it was only prepared in English.

23          THE COURT:  What about the statement of facts?

24          MR. PEREZ:  That's also when I went over the

25  statement of facts in Spanish with Mr. Mancuso, and he

1    understood the facts and he agreed to it by signing the

2    statement of facts.

3                    THE COURT:  Okay.

4                    Now, you understand, sir, obviously that by entering

5    pleas to these offenses, that you will never be able to remain

6    in this country lawfully and you will be subject to

7    deportation at some point in time.  Is that clear?

8                    THE DEFENDANT:  I understand.

9                    THE COURT:  It wouldn't really be deportation since

10   he is not -- expulsion.

11                   MR. SPELKE:  More or less, yes, Your Honor.

12                   MR. PEREZ:  Although in paragraph 16 it contemplates

13   that under certain circumstances if it becomes necessary, the

14   defendant and his family may apply for some kind of relief

15   solely within the discretion of the government.

16                   THE COURT:  It doesn't really tell you what will

17   happen if there are threats.  It only says that the Department

18   of Justice will consider what to do.

19                   MR. PEREZ:  I understand.  It's not very explicit,

20   but I think that the implicit understanding is that if as a

21   result of his cooperation, Mr. Mancuso and his family are

22   placed in danger, that the government, acting in good faith,

23   will take that factor into account and make whatever

24   appropriate recommendations they believe are needed.

25                   THE COURT:  Well, I don't want him to read into it

1    things that aren't there.  It says what it says, if he or his

2    family are threatened, the matter will be referred to the DEA

3    or other appropriate investigatory authority to a conduct a

4    threat assessment.  And once that's done, they'll act

5    appropriately and what to do is within their sole discretion.

6    So there are no promises here.

7              MR. PEREZ:  No, I understand.

8              THE COURT:  Do you understand that, Mr. Mancuso?

9              THE DEFENDANT:  I understand, Your Honor.

10             THE COURT:  All right.  Now, have you taken any

11   drugs or alcohol in the last few days that affect your ability

12   to understand these proceedings?

13             THE DEFENDANT:  No, Your Honor.

14             THE COURT:  Have you ever been treated for mental

15   illness or emotional problems?

16             THE DEFENDANT:  No, Your Honor.

17             THE COURT:  Now, Mr. Perez represents you and has

18   for a while.  Are you satisfied with his services?

19             THE DEFENDANT:  Yes, Your Honor.

20             THE COURT:  Have you had enough time to talk to him

21   about this case?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And also, have you had enough time to

24   talk to him about your decision to plead guilty?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Are you involved on his behalf with

2     respect to the Colombian aspect of this?

3          MR. PEREZ:  No, I work in conjunction with Colombian

4     lawyers who are involved in that and I'm somewhat familiar

5     with the Peace and Justice side.

6          THE COURT:  Now, under our system, you do have a

7     constitutional right to a trial.  A trial would consist of a

8     jury of 12 citizens, they would have to find you guilty beyond

9     a reasonable doubt.  You would have a right to have counsel

10    represent you, and if you could not afford one, one would be

11    appointed for you.  At a trial you would be able to have your

12    counsel cross-examine the government's witnesses, you would

13    have the right to call witnesses on your own behalf, you could

14    also take the stand and testify if you wanted to, but you are

15    not required to do so because you have a Fifth Amendment right

16    to remain silent.

17          If you were to remain silent, the jury would be told

18    that they could not infer guilt from your silence.  Also, if

19    you went to trial and were convicted, you would have a right

20    to appeal and you could argue that the Court had made an error

21    below or that the jury didn't have sufficient evidence.

22          Under this plea agreement, you are giving up all

23    those rights.  There will be no presumption of innocence or

24    right to appeal or right to trial.  And, in fact, as I just

25    discussed with your lawyer, in one of these paragraphs you

1    have given up any appellate rights.  Do you understand what I

2    mean by that?

3              THE DEFENDANT:  I do understand, Your Honor.

4              THE COURT:  And you have voluntarily and knowingly

5    waived any right to appeal this sentence as long as I remain

6    within the statutory maximum.  Is that clear?

7              THE DEFENDANT:  Yes, Your Honor.

8              THE COURT:  And are you also willing to give up your

9    other constitutional rights that I've just outlined for you?

10             THE DEFENDANT:  Yes, Your Honor.

11             THE COURT:  Now, the factual basis, statement of

12   facts in support of the plea, you signed at the last page?

13   Did your counsel read these statements, these facts to you?

14             THE DEFENDANT:  Yes, Your Honor.

15             THE COURT:  And it talks about your involvement with

16   sending cocaine from Colombia by fast boats ultimately for

17   sale in the United States; is that correct?

18             THE DEFENDANT:  Yes, Your Honor.

19             THE COURT:  And you worked with the AUC troops on

20   the coast of Colombia and were involved in loading these boats

21   so they could go to the United States?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  And it indicates the quantities, at

24   least from Mobile, Alabama.  Were you involved in that

25   shipment of 300 kilograms of powder cocaine?

```
 1              THE DEFENDANT:  That was Commander Carlos Castano

 2   who participated in that.

 3              MR. PEREZ:  He is not alleged to have been involved

 4   in that particular load.

 5              THE COURT:  Okay.  Which ones -- oh, here, what

 6   about this one?  There were seven cocaine loads of between 500

 7   to 1,000 kilograms from Cordoba area that you controlled; is

 8   that correct?

 9              THE DEFENDANT:  Yes, Your Honor, correct.

10              THE COURT:  And this cocaine was shipped under the

11   protection of AUC soldiers to the coast of Colombia and loaded

12   on go fast boats for transport to Central America, Jamaica,

13   Haiti and the Dominican Republic; is that correct?

14              THE DEFENDANT:  Yes, Your Honor.

15              THE COURT:  And these shipments, they list them as

16   March 19th, '99, August 4th '99, that's 500 kilograms.  The

17   March 19th is 1,000 kilograms, November 23rd, 500.  January

18   16, 500; March 4th, another 500.  These were all intended for

19   the United States.  Six hundred kilograms in June, 2000; 814,

20   September 12th.  You were involved in these shipments that

21   I've just listed?

22              THE DEFENDANT:  Yes, Your Honor.

23              THE COURT:  And what was your involvement?

24              THE WITNESS:  We supplied the drugs to the exported

25   and we got a percentage of the exportation.
```

1            THE COURT:  You got a percentage of the price or

2    what do you mean?

3            THE DEFENDANT:  A percentage of the drug that was

4    sent to those places.

5            THE COURT:  Mr. Perez, I'm not sure I'm quite

6    understanding when he says a percentage of the drugs?

7            MR. PEREZ:  I think that if, for instance, a

8    thousand kilos were delivered to the Dominican Republic in

9    route to the United States, they would get 250 hypothetically.

10   So that's what he means by a percentage.

11           THE COURT:  Two hundred and fifty kilograms?

12           MR. PEREZ:  Yes.  In other words, they will get a

13   percentage on the actual amount that was smuggled.

14           MR. SPELKE:  For ultimate sale.

15           MR. PEREZ:  For ultimate sale.

16           THE COURT:  So that ultimately they got money?

17           MR. PEREZ:  Ultimately they got money, that's

18   exactly what -- they got money once the cocaine was sold.

19           THE COURT:  Right.  Okay.

20           All right.  Was there anything in this statement of

21   facts that you are aware of that was inaccurate or false?

22           THE DEFENDANT:  No, Your Honor.

23           THE COURT:  I understand not all of it applies

24   directly to you, but it also lists a, several -- he is not

25   pleading to any of the massacres at the end though, right?

1          MR. SPELKE:  Not in this case, Your Honor, no.  But

2     they are part of the statement of facts, Your Honor.  It's the

3     way the AUC kept control of that area.

4          THE COURT:  Okay.  You were on this public

5     broadcasting service special called Wide Angel; is that right?

6          MR. PEREZ:  What page are we reading from, sorry?

7          THE COURT:  Paragraph 17.  It said the defendant

8     admitted that AUC received 70 percent of its money from taxing

9     drug traffickers.

10          THE DEFENDANT:  Yes, Your Honor.  That was an

11     interview that I gave to RCL, a television program.  Yes, Your

12     Honor.

13          THE COURT:  All right.  And he's also admitted to

14     involvement in murders of military targets, et cetera, on

15     paragraph 18; is that correct?

16          THE DEFENDANT:  Your Honor, because of the chain of

17     command, I feel I am accepting responsibility for all the

18     events.  I am also following the Justice and Peace Act in

19     Colombia.  And this is not because I have myself participated

20     directly in those events, but -- not because I have done -- I

21     have perpetrated those events directly, but because of men

22     that were under my command were the ones that perpetrated

23     them.  And as part of the chain of command, I am assuming full

24     responsibility.

25          MR. PEREZ:  And those were statements that he

admitted to in Colombia pursuant to the Justice and Peace Act

where he was required to tell the truth about his involvement

in a number of different acts, some of which were changed in

this document, some of which had to do with his activities in

Colombia.

THE COURT:  But this indictment is limited to

exporting cocaine.

MR. PEREZ:  Exactly.  This indictment is, only deals

with activities that took place between 1997 and 2001.  And it

only deals with the importation of cocaine, it does not charge

anything else.  The relevant conduct that we are mentioning in

the statement of facts is just so that the Court understands

that he's giving a full disclosure of all the facts about his

criminal activity in Colombia, and he's doing so for two

reasons:  Because he is required to do that under Colombian

law; and number two, in order to be truthful about his

involvement before the Court in the United States.

THE COURT:  All right.  Now, in terms of the plea

agreement, Mr. Mancuso, I want to make sure that you

understand it as best as possible.

It indicates that you are going to enter a plea

guilty to count one of the indictment.  Count one charges you

with conspiracy to both manufacture and distribute five

kilograms or more of cocaine, knowing that it would be

unlawfully imported into the United States and knowingly and

1    intentionally and unlawfully importing five kilograms or more

2    of cocaine into the United States from Colombia.

3         This sentence carries a term of imprisonment not

4    less than ten, that means a mandatory ten years, and not more

5    than life.  Now, it has been explained the government will not

6    ask for life, but I have the power under the guidelines and

7    under the statute to impose life.  They have calculated the

8    guidelines in this case, and without even getting to the issue

9    of whether or not AUC is a terrorist organization, the

10   guidelines, assuming acceptance for responsibility, come out

11   to be a 42.  And a 42 under the guidelines provides for 360

12   months to life.

13        The guidelines are advisory, the ten-year mandatory

14   minimum is not advisory.  I have no choice about that.  But it

15   is clear from this agreement that you are engaging in a form

16   of cooperation to seek a departure under the guidelines.  But

17   I must tell you that the maximum possible sentence here is not

18   less than ten years, not more than life, a fine not to exceed

19   four million and a period of supervised release of at least

20   five years.  Practically speaking, you won't be put on

21   supervised release in this country because you'll be sent back

22   to Colombia, correct?

23        MR. SPELKE:  Your Honor, if he gets sent back to

24   Colombia, he can still be on supervised release, but it would

25   be a rather --

1          THE COURT:  Right.

2          MR. SPELKE:  -- fruitless operation.

3          THE COURT:  You will not be eligible for parole.

4     You will have to pay a hundred dollar special assessment.  The

5     guidelines are determined by the amount of drugs here, which

6     are more than 150 kilograms of cocaine.  As I said, the

7     guidelines, the base level is 38, then in paragraph eight it

8     provides for a four-level enhancement or addition, another

9     two-level addition, a one-level addition for the extraordinary

10    amount of drugs, and then finally, a two-level increase for

11    possessing a firearm.  I don't remember if there was anything

12    in the statement of facts regarding possessing a firearm,

13    though.

14         MR. SPELKE:  Your Honor, if there is not, there

15    should be.  The AUC used the firearms in the massacres.

16         MR. PEREZ:  Why don't we -- we can stipulate that

17    some AUC members possessed firearms in order to facilitate the

18    transfer of drugs from the northern part of Colombia to

19    countries such as Dominican Republic, Haiti, in route to the

20    United States.  We don't have to get into -- so that's

21    basically one way of stipulating to the firearms.

22         THE COURT:  It's part of the conspiracy you're

23    saying, and I think Mr. Mancuso has to acknowledge this, that

24    he was aware that others -- it was known to him and

25    foreseeable that others carried firearms in order to protect

1   the drugs or to transport the drugs; is that correct?

2            THE DEFENDANT:  That's correct, Your Honor.

3            THE COURT:  All right.  Again, the guideline

4   calculations, we cannot determine them ultimately until we

5   have a study done by probation.  And even though it has come

6   out to be 42, apparently it could be even higher because there

7   is some issue of whether or not there should be another

8   enhancement for terrorism.  If this is raised, it will be

9   determined by the Court.  It strikes me as not material to

10  anything, but that's what it says here.

11           MR. PEREZ:  All right.  I concur, but we'll deal

12  with that issue in the future.

13           THE COURT:  If it comes up.

14           MR. PEREZ:  Yeah, yeah.

15           THE COURT:  I mean, I believe the law doesn't

16  require me to make findings about things that aren't necessary

17  or material.

18           The United States has made no promises or

19  representations regarding the specific sentence you will

20  receive, correct?

21           THE DEFENDANT:  No, Your Honor.

22           THE COURT:  And it also says you cannot withdraw

23  your guilty plea because you find the sentence too harsh.  You

24  cannot withdraw your plea based on the sentence.  Is that

25  clear?

1      THE DEFENDANT:  I understand, Your Honor.

2      THE COURT:  It also provides basically that the only

3 things that you can ask for is a three-point reduction that

4 would take it down to 42, for acceptance of responsibility and

5 some kind of consideration for cooperation.  You're not going

6 to be able to look for any other adjustment, correct?

7      THE DEFENDANT:  Yes, Your Honor, I do understand.

8      THE COURT:  The government says here, assuming you

9 provide truthful testimony and provide truthful and complete

10 testimony regarding your involvement to both the probation

11 office as well as to the Court, they will recommend the

12 three-point reduction for acceptance of responsibility.  You

13 also agree to cooperate with the government.  You will

14 cooperate truthfully, completely and forthrightly with the

15 Untied States Department of Justice and any federal, state,

16 local and foreign law enforcement authorities and government

17 entities in any matter as to which the Department of Justice

18 deems your cooperation relevant.

19      You cannot falsely implicate an innocent person.

20 You can't protect others.  You cannot exaggerate anybody's

21 involvement or minimize anybody's involvement.  The United

22 States recognizes that you have been participating in the

23 Justice and Peace Act with the Colombian government for

24 several years, and that this will be brought to my attention

25 at the time of sentencing.

1          The only thing though, and we discussed this before,

2     that will constitute substantial assistance for purposes of

3     5K, that's for the purposes of the government, are those

4     things that are useful to the United States Department of

5     Justice or they're useful to both Colombia and the United

6     States.  If it's only useful to the Colombians, it will not be

7     factored into their decision regarding whether or not you're

8     eligible for a departure based on substantial assistance.

9          Is that properly stated, Mr. Spelke?

10          MR. SPELKE:  Your Honor, that is right on the money.

11          THE COURT:  All right.  It says that you will give a

12     complete and full accounting of all your assets, financial and

13     otherwise, to the Department of Justice or the United States.

14     The United States recognizes that assets that belong to the

15     defendant have already been forfeited to the Colombians under

16     the Justice and Peace Act.  You will be interviewed by United

17     Sates and foreign law enforcement agents and attorneys from

18     both U.S. and foreign governments.  You have the right to have

19     counsel present, but you agreed that you can have these

20     interviews conducted without counsel present as long as

21     counsel is notified and provided the opportunity to attend.

22          Your cooperation will continue until the Narcotics

23     Division of Justice decides that you have finished

24     cooperating, and it may continue after you have been

25     sentenced.  Cooperation after sentencing may be recognized by

the United States if they chose to file another motion for

reduction in sentence under Rule 35.  But only they can seek

such a reduction, you do not have that ability.

And it's up to the government to decide, not the

Court, whether or not you have fulfilled your obligations

under this agreement and provided substantial assistance.  If

they do not file a motion under what's called 5K and/or 3553,

I cannot grant a departure based on substantial assistance.

You need a motion under 3553 to go below the ten years,

otherwise the ten years must be imposed.

If they file a motion under 5K and 3553, the Court

has discretion to sentence you below the guideline range.  The

Court always has discretion to vary from the guidelines, but

without a motion I cannot do it on the basis of substantial

assistance.  Is that clear?

THE DEFENDANT:  I understand, Your Honor.

MR. PEREZ:  Under 3553 the Court is entitled to go

below the ten-year minimum mandatory as well, but.

THE COURT:  Yes, but only if they file under 3553.

MR. PEREZ:  Exactly.

THE COURT:  The determination of whether or not you

have provided substantial assistance rests solely with the

United States Department of Justice and it is not reviewable

by me.  If they don't file a motion, I cannot depart on this

basis.

1    The failure, if the government were to choose not to

2  file a motion, is not a grounds for you to withdraw your plea

3  and you are still obligated to all the promises you made under

4  this plea agreement.  If in its sole discretion the United

5  States agrees to file a motion for departure, a downward

6  departure based on substantial assistance, they will inform

7  the Court of any and all cooperation provided by you to the

8  United States.

9    You agree not to commit any other criminal acts from

10 this day forward.  If you were to do such a thing, it would

11 constitute a breech of the agreement.  The government need

12 only prove a breech by a preponderance of the evidence.  And

13 if there is a breech, they're relieved, the government is

14 relieved of all obligations under this agreement, but you're

15 still stuck with all your promises.

16    It also says if you ever end up being a witness at a

17 trial or other judicial proceeding and you give contrary

18 evidence to what you've told the government, the government

19 can cross-examine you about what you have told them in the

20 past or they can introduce your statements here as rebuttal

21 evidence.  They can also prosecute you for perjury or false

22 statement or obstruction of justice if that were to occur now

23 or hereinafter.

24    If they were to determine that your cooperation was

25 not truthful, they would no longer have any promises that

1   would apply to them under this agreement and they could

2   prosecute you for any criminal activity, notwithstanding any

3   other provision of this agreement.  And they could use

4   everything that you've said here today, so that it has to be

5   clear that if, in fact, you are not truthful or do not provide

6   complete information, they can use what you've told them and

7   they can prosecute you.  Is that clear?  And you cannot raise

8   any statute of limitations.

9           Did you want to say something?

10          MR. PEREZ:  No, no, I know.  That's fine.

11          THE COURT:  You agree that you cannot withdraw your

12   guilty plea if you breech the agreement?

13          THE DEFENDANT:  Yes, Your Honor.

14          THE COURT:  And you agree that you cannot withdraw

15   your guilty plea pursuant to this plea agreement for any

16   reason?  And if you were to try to do so, it would be a breech

17   of the plea agreement and the government is free of all of its

18   obligations?

19          THE DEFENDANT:  Yes, Your Honor.

20          THE COURT:  Well, this is not quite right unless

21   you've changed it, Mr. Spelke.

22          Twenty-four says the United States reserves the

23   right to recommend a specific period of incarceration and fine

24   up to the maximum sentence of incarceration and fine allowable

25   by law.  We have now determined that you're not free to ask

1    for anything up to the maximum incarceration.

2              MR. SPELKE:  Cannot ask for life, that is correct.

3              THE COURT:  So, paragraph 24 ought to be clarified,

4    I would think.

5              MR. PEREZ:  What I will suggest we do is just we

6    inter-delineate or just ask the defendant if he understands

7    that the specific period of incarceration cannot be life.

8              THE COURT:  Cannot be life.  They cannot ask for

9    life.  The Court can impose it.  So where are you making it

10   change?  Here's the original.

11             MR. SPELKE:  Your Honor, it's in the agreement that

12   we can't ask for life already in a footnote, I believe.

13             MR. PEREZ:  Yes, it is.

14             MR. SPELKE:  So I think that --

15             THE COURT:  You could just say the maximum sentence

16   of incarceration, but not life.

17             Mr.  Mancuso, what they're doing is clarifying in

18   paragraph 24 that the government can ask for anything but life

19   and the maximum fine provided for by law.

20             THE DEFENDANT:  Yes, Your Honor.

21             MR. PEREZ:  The amendment has been made.

22             THE COURT:  All right.  Everybody has initialed it?

23             MR. PEREZ:  Yes.

24             THE COURT:  Okay.  And then it says here that you

25   recognize that the United States Department of Treasury Office

of Foreign Assets Control has put you on its sanction list

pursuant to the Foreign Narcotics Kingpin Designation Act

which imposes economic sanctions on you and prohibits United

States, individuals and corporations from doing business with

you.

After you complete your sentence and cooperation as

determined by the U.S., the Department of Justice agrees to

take no position on a petition if you were to file one to

Treasury to remove your name from the sanctions list. They're

saying they won't take a position one way or another. The

determination whether your name would be removed rests with

the Department of Treasury and does not involve any of the

parties here.

You understand that you're compliance with all parts

of this agreement extend throughout and beyond the period of

your sentence up until the time that the Narcotics Division of

Justice determines that your cooperation is complete. And

again, failure to follow any term of the agreement is a

violation of the agreement.

If you were to violate the agreement, the

government, at its option, may either move to vacate the plea,

rendering it null and void and prosecute you, or they can have

you resentenced. You've agreed that no charges or time barred

in the event that a prosecution were to occur if you breech

the agreement.

1          The Court is not bound by this plea agreement, the

2     Court retains discretion to sentence you consistent with the

3     law.  This agreement binds only the Narcotics and Dangerous

4     Drug Section of the Criminal Division of Justice, it does not

5     bind any other federal, local or state or foreign authority.

6          You've agreed to allow sentencing to be delayed so

7     that your cooperation may be completed and, therefore, you

8     give up the right to any speedy sentencing.  You will be held

9     without bond.

10          Do you understand that?

11          THE DEFENDANT:  I understand.

12          THE COURT:  You will not be required to provide any

13     privileged material that you may have learned during meetings

14     with codefendants and their attorneys.

15          Did we determine last time that's highly unlikely?

16          MR. SPELKE:  Your Honor, it is highly unlikely.

17     There have been a host of attorneys both here and in Colombia,

18     so we wanted to make sure that information was in there.

19          THE COURT:  Okay.  But has he forfeited everything

20     already to Colombia, this next paragraph, or is there anything

21     left to forfeit?

22          MR. PEREZ:  No.  We anticipate that there will be

23     additional forfeitures coming down the pipe, and that they

24     will come through the United States and then the United States

25     will make an appropriate disposition of whatever properties

1   are forfeited.  I think that's what the agreement envisions.

2   So they would go through the U.S. government to Colombia.

3            THE COURT:  Okay.  But you will not contest any

4   forfeiture whether it be to Colombia or to the United States,

5   and you will assist the government in defending any forfeiture

6   action if some third party contests the forfeiture.  Do you

7   understand that?

8            THE DEFENDANT:  I will not oppose it.

9            THE COURT:  Okay.  Assets forfeited pursuant to this

10   agreement may be used as reparations to Colombian victims of

11   AUC violence and crimes.  He waives any right to a jury trial

12   on forfeiture of assets and waives all constitutional, legal

13   and equitable defenses to the forfeiture.

14            Has anyone threatened you in any way to enter into

15   this plea agreement?

16            THE DEFENDANT:  No, Your Honor.

17            THE COURT:  Are you pleading freely and voluntarily

18   because you are guilty?

19            THE DEFENDANT:  Yes, Your Honor.

20            THE COURT:  The government has agreed that they have

21   no objection to you getting credit for time served for the

22   amount of time you were incarcerated in Colombia between

23   August 16th, '06 and May 14th of 2008 as part of the Justice

24   and Peace Act.

25            We have already discussed in paragraph 35, you have

1    waived your appellate rights after talking with your counsel

2    about this, correct?

3                THE DEFENDANT:  Yes, Your Honor.

4                THE COURT:  And you understand that the -- what

5    rights you're giving up?  You're giving up the right to appeal

6    anything that the Court does or the manner in which the

7    sentence is imposed as long as I stay within the statutory

8    maximum?

9                THE DEFENDANT:  Yes, Your Honor.

10               THE COURT:  Now, they added a new paragraph 36,

11   which allows your sentence under the Justice and Peace Act to

12   be served in the United States.  And the U.S. will not object

13   to you serving your sentence under the Justice and Peace Act

14   concurrently with any sentence imposed in this case.  So they

15   can be served at the same time.  Is that clear?

16               THE DEFENDANT:  Yes, Your Honor.

17               THE COURT:  The only thing that this says is you

18   can't serve a longer sentence here solely because of the

19   Colombian sentence.

20               Is it true that this agreement that we've just gone

21   over that you signed represents your entire understanding of

22   the promises and representations that you have reached with

23   the government?

24               THE DEFENDANT:  Yes, Your Honor.

25               THE COURT:  Have there been any other agreements by

1   your lawyer or by the prosecution or the law enforcement

2   authorities, any other promises, representations or any other

3   inducements for you to enter into this plea agreement that are

4   not stated in writing in the agreement?

5            THE DEFENDANT:  No, Your Honor.

6            THE COURT:  It says here this supersedes all prior

7   understandings, promises, agreements or conditions that

8   existed before between you and the Department of Justice.

9   This is the only operative document.  Do you understand that?

10           THE DEFENDANT:  I understand, Your Honor.

11           THE COURT:  And you signed at the last page saying

12  you consulted with counsel, you understand your rights and the

13  sentencing guidelines, you've read the plea agreement,

14  reviewed it with your counsel, you understand it and

15  voluntarily agree to it without reservation.  Is that correct?

16           THE DEFENDANT:  Yes, Your Honor.

17           THE COURT:  Do you have any questions about the plea

18  agreement?

19           THE DEFENDANT:  No, Your Honor, I have no questions.

20           THE COURT:  Has anybody threatened you in any way or

21  forced you to enter into this agreement?

22           THE DEFENDANT:  No, Your Honor, nobody.

23           THE COURT:  Has anybody given you any promises or

24  guarantees about what sentence the Court will ultimately

25  impose here?

1            THE DEFENDANT:  Nobody.

2            THE COURT:  Now, Mr. Spelke, is there anything else

3    that we need to cover before we proceed with the plea?

4            MR. SPELKE:  Nothing from the government.  Thank

5    you, Your Honor.

6            THE COURT:  Mr. Perez?

7            MR. PEREZ:  Everything has been covered.

8            THE COURT:  Does Mr. Mancuso have any questions at

9    this time?

10           THE DEFENDANT:  No, Your Honor.  Thank you.

11           THE COURT:  The Court at this time then would ask

12   how do you wish to plead to the count one of the indictment

13   which charges you with conspiracy to both manufacture and

14   distribute five kilograms or more of cocaine knowing that this

15   would be imported into the United States and knowingly,

16   intentionally and unlawfully importing five kilograms or more

17   of cocaine into the United States from Colombia in violation

18   of 21 USC 960, 952, 959 and 18 USC Section Two?  How do you

19   wish to plead?

20           THE DEFENDANT:  Guilty, Your Honor.

21           THE COURT:  The Court finds the defendant

22   understands the proceedings, he has voluntarily entered a plea

23   of guilty, he has knowingly and intelligently waived his

24   constitutional rights and there's a factual basis for the

25   plea.  The Court will, therefore, accept the plea at this

```
 1   time.

 2            And, Mr. Spelke, exactly how are we about to

 3   proceed?

 4            MR. SPELKE:  Your Honor, if it's possible, I would

 5   like to set this case over for approximately three months for

 6   a status.  Is that okay, Mr. Perez?

 7            MR. PEREZ:  That's fine.

 8            THE COURT:  Will he remain at the jail?

 9            MR. SPELKE:  Well, Your Honor, that is an excellent

10   question.  I don't think the Court is aware that Mr. Mancuso

11   has done at least one, he has testified before the Colombian

12   Supreme Court once already.  And there may be additional times

13   that we're going to have Mr. Mancuso testify before the

14   Colombians or the Supreme Court and maybe part of the Justice

15   and Peace Act.  I'm going to be looking into a facility that

16   may be more appropriate for the lengths that are necessary for

17   that.

18            But for right now he's going to go back to the CTF,

19   and then I think what I would like to do is try to find a

20   facility locally.

21            THE COURT:  Okay.  Well, why don't we put it over to

22   the 28th of January.

23            Mr. Perez, does the time of day matter to you or?

24            MR. PEREZ:  If we can do it at 2:00, it's easier.

25            THE COURT:  1:45.
```

1          MR. PEREZ:  1:45.  And also as part of the request,

2    I was going to ask that the preparation of the PSR be delayed

3    until a further order of the Court?

4          THE COURT:  Okay.  That's fine.  We won't order it

5    at this time.

6          All right.  And Mr. -- if there's nothing further, I

7    just have a question about, we have some status set in

8    November, I think.

9          (The proceedings adjourned at 3:00 P.M.)

10

11

12

13

14

15                    CERTIFICATE OF REPORTER

16          I, Lisa Walker Griffith, certify that the foregoing

17    is a correct transcript from the record of proceedings in the

18    above-entitled matter.

19

20

21

22

23    _____    _____

24    Lisa Walker Griffith, RPR                      Date

25