**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|

**UNITED STATES OF AMERICA**            |

                           |            **Criminal No. 02-388-02 (ESH)**

        **v.**            |

**SALVATORE MANCUSO GOMEZ**            |

**MOTION TO ENFORCE PLEA AGREEMENT**

COMES NOW DEFENDANT, Salvatore Mancuso Gomez, by and through undersigned counsel, and respectfully requests that this Court enforce Mr. Mancuso's Plea Agreement with the government.

**Concise Position**

Contrary to other defendants similarly situated, the activities of the Autodefensas Unidas de Colombia ("AUC") (United Self Defense Forces of Colombia) have become a central feature of the government's argument at sentencing.[1]  The government sought Mr. Mancuso's truthful cooperation with Colombia which they now are using to demonize him.  The plea agreement was not designed to accomplish this objective.  On the contrary, both the United States and the Colombian government were primarily concerned with obtaining his truthful testimony to prosecute high ranking wrongdoers in both countries.

The government has violated its contract with Mr. Mancuso by failing to adequately credit his cooperation; specifically, cooperation with Colombian authorities as that cooperation benefits the United States and thereby appropriately considered in the government's U.S.S.G. §5K1.1 motion for guideline reduction.  Mr. Mancuso's cooperation with Colombian authorities was so significant, that if properly credited, he would warrant a greater percentage of guideline reduction than the 35

---

[1] Mr. Mancuso respectfully notes that he was extradited to the United States only for his drug trafficking activities.  His petition for extradition only recounted those activities to the exclusion of any reference as an AUC Block Commander. *See*, September 20, 2002 Extradition Request No. 732.  The Supreme Court and President of Colombia only authorized the extradition based upon Mr. Mancuso's drug trafficking activities, not for his role in the AUC. Colombian Supreme Court Decision dated October 4, 2004, Case No. 22245.

percent being offered by the government.

In addition, prior to the execution of the plea agreement, the government induced Mr. Mancuso, through written assurances incorporated in emails, to cooperate in sensitive Colombian cases based on the premise that there would be an independent recommendation for reduction due to his assistance in non-U.S. cases. More specifically, the government promised that in addition to his §5K1.1 recommendation for cooperation in non-U.S. cases the government would make an independent recommendation based upon his cooperation against high ranking officials in Colombian related cases.

## Background

On May 13, 2008, Mr. Mancuso was extradited from Colombia and arrived in Washington, D.C. Between May 2008 and the date Mr. Mancuso entered his guilty plea, (October 14, 2008), Mr. Mancuso and his defense counsel engaged in extensive plea agreement negotiations; negotiations that centered on cooperation. As part of these negotiations, the nature and expanse of Mr. Mancuso's cooperation became a core issue; specifically, what credit would be awarded Mr. Mancuso for information that would benefit U.S. authorities, Colombian authorities, or both.

Although a footnote in the plea agreement provides that Mr. Mancuso will not receive a double benefit,[2] other provisions of the agreement contradict and clearly indicate that the Court is to consider such cooperation in formulating a final sentence in the case. In fact, the same footnote specifically identifies a scenario where Mr. Mancuso would receive credit for "information [that] benefits both the United States and Colombia authorities, the Defendant will be provided credit under this agreement." *See*, Plea Agreement, Page 8, ¶ 15, FN 4.

To begin with, Mr. Mancuso submits that the plea agreement specifically identifies a third

---

[2] See, Plea Agreement, Page 8, Footnote 4.

category of cooperation for which the he would receive a sentence reduction pursuant to §5K1.1. See, Exhibit A- Plea Agreement, ¶ 15, FN 4; *see also*, Sentencing Transcript, Page 22:1-8.[3] Mr. Mancuso's cooperation provided bilateral assistance to both United States and Colombia; and, it is undisputed that such cooperation was encompassed within the scope of the plea agreement. Indeed, during the course of the change of his plea, the Court specifically advised Mr. Mancuso that he would receive a benefit for cooperation that he provided to Colombia that benefitted the United States.[4]

As highlighted in the government's sentencing memorandum, drug trafficking provided the means by which to exert "authority, power, and influence over corrupt officials and over strategic areas." *See* Government's Sentencing Memorandum, at page 26. Moreover, the government recognized that corruption had "a devastating and long lasting impact on the entire country of Colombia, one of the United States closest allies in the region and across the hemisphere." *Id.* at 26. Hence, the government would be hard pressed to argue that Mr. Mancuso's testimony against the head of the Colombian counter intelligence agency, known as "DAS" and other high ranking police and military officials did not directly benefit the United States. As pointed out by DOJ Attorney Robert Spelke, who had the case for the four years during which the bulk of the cooperation was provided, some of these official worked hand-in-hand with U.S. Department of Justice personnel, DEA personnel, ICE personnel, CIA, and FBI. *See*, Transcript of April 1, 2015 Evidentiary Hearing, 39:22-25; and 40:1.[5]

---

[3] THE COURT: "The only thing though, and we discussed this before, that will constitute substantial assistance for purposes of 5K, that's for the purposes of the government, are those things that are useful to the United States department of Justice or they're useful to both Colombia and the United States. If it's only useful to the Colombians, it will not be factored into their decision regarding whether or not you're eligible for a departure based on substantial assistance. Is that properly stated, Mr. Spelke?

MR. SPELKE: Your Honor, that is right on the money.

[4] *See*, Transcript of Change of Plea, dated October 14, 2008, 22:1-10.

[5] "THE COURT: Okay, so it's sort of larger policy political implications of cooperating with somebody from Colombia that does not actually fall within paragraph 15. THE WITNESS [FORMER DOJ ATTORNEY ROBERT SPELKE]: If

Secondly, emails submitted by the government subsequent to the execution of the plea agreement induced Mr. Mancuso to cooperate in sensitive Colombian cases based on the promise that there would be a recommendation in non-U.S. cases.  More specifically, the government promised that in addition to its §5K1.1 recommendation for cooperation in U.S. cases (as well as cases that benefited Colombia and the U.S.) that an independent recommendation would be made based upon his testimony against high ranking officials in Colombia.  Mr. Mancuso submits that the terms of the plea agreement provided significant inducement to provide cooperation in non-U.S. cases.  *See*, Plea Agreement, ¶¶'s 14 and 15.

Subsequent to the execution of the agreement in 2008, and in response to request made by Colombian law enforcement and prosecutors in conjunction with U.S. law enforcement personnel at the U.S. Embassy in Bogota,[6] additional demands were being made for Mr. Mancuso's testimony. What became apparent was a bi-lateral effort to promote and combat drug trafficking and its logical effects, including political and law enforcement corruption.  As a result thereof, the signatories to the plea agreement, exchanged numerous emails that confirms and explains the expectations of the parties regarding the terms of the agreement.  For instance, the emails were designed to frame the manner in which the relevant cooperation was going to be recognized and credited, and the vehicle used to bring

---

that's the 5K, that is correct, Your Honor. THE COURT: Okay. Go ahead. Finish your thought. THE WITNESS: But as far as for the Court to consider, I think that's one. The other one was what Mr.Perez already alluded to. And that was that, he did testify against corrupt officials which I think does have -- again, this is just my opinion -- direct or indirect benefit to the United States because of these individuals, DEA agents, FBI agents, CIA individuals that are in Colombia and operating, and obviously if someone is corrupt, they can give the names,they can give up the operations. But again Your Honor, that's just my opinion. BY MR. PEREZ: But those are the facts, that it was important for the United States to know about that. A About the corruption? Yes. Yeah. Q Those are facts. Just that, I mean, you were asked to found out, right? A Found out about corruption? Q Yes. A Nobody had to ask me Mr. Perez. I kind of figured that out on my own, but yes. Q Factually it was important? A Yes, of course. Q It is not a question of your opinion. Factually it was important? A Yes. But whether it benefited the United States, that's my opinion. Obviously, the government and Mr. Laymon may disagree with that. But you asked me my opinion, that's my opinion." *See*, Transcript of April 1, 2015, at 49:12-25; and 50:1-22.

[6] United States Ambassador William Brownsfield stated that the prosecutors would provide an incentive for the extradited AUC members to cooperate with Colombia.  He added that the government "will make a recommendation to the courts so that their cooperation with Colombia would be credited." *See*, http://www.eltiempo.com/archivo/documento/CMS-5356850.

to the Court's attention the extent and value of the assistance for the purpose of a sentence reduction. More specifically, how Mr. Mancuso would receive credit for his cooperation with the United States, Colombia, and bi-lateral assistance benefiting both countries.  While addressing those concerns, DOJ Attorney Robert Spelke specifically mentioned that a recommendation for reduction would be made in non-U.S. cases. [7]

In this case, the government is relying upon Mr. Mancuso's truthful statements made as Colombian cooperation presumably to justify its recommendation for the high end of the guidelines. In the same sentencing argument, they failed to recommend a lower sentence for the substantial assistance which benefitted both countries, while concurrently using his truthful statement to recommend the high, as opposed to, the low end of the guidelines, a difference of approximately 5 years.  The government should not be allowed to reap the benefits of Mr. Mancuso's substantial assistance, specifically, his truthful and forthright testimony and use it as their premise from which to support a high end guideline sentence.   In lieu of receiving a double benefit, the government is employing a double standard to eliminate an entire category of the cooperation, to undermine the value of Mr. Mancuso's substantial assistance. Finally, the existence of a category of cooperation benefitting both the United States and Colombia and warranting reduction pursuant to §5K1.1 is supported further in an additional section of the plea agreement when sentences are discussed.  The

[7] Email *from Robert Spelke, May 30, 2010*, "Mr. Perez, Thank you for your response.  You are correct that, at the time Mr. Mancuso entered his plea agreement, the United States believed that there were two categories in which Mr. Mancuso could provide cooperation - information that benefits cases in the United States directly and information that does not benefit cases in the United States.  It was my understanding that the second category - information that does not benefit cases in the United States –is not as narrow as you described.  The United States was well aware of the Colombian government's request for Mr. Mancuso to testify before the Colombian Supreme Court and the Human Rights Commission in addition to the Justice and Peace Act.  The language in the plea agreement is consistent with this notion and contemplates these type of efforts by Mr. Mancuso.  The plea agreement requires cooperation in all proceedings, not just the Justice and Peace Act.  Assuming that Mr. Mancuso successfully completes his cooperation. The United States will, of course present to the sentencing Court the significance of Mr. Mancuso's testimony before the Colombian Supreme Court as part of our <u>recommendation for a reduction in non-U.S. cases</u>. (emphasis added) Once again, I trust this satisfies your concerns.".  *Id.*

plea agreement clearly links how a sentence under Justice & Peace and a United States sentence can run concurrent. (Sentencing Transcript Page 18 ¶36)  This provision is significant since it identifies the linkage between the United States and Colombia in Mr. Mancuso's case; specifically, it reveals the connection between crime, punishment and sentence.  It is clear that from the genesis of Mr. Mancuso's case, and the prosecution and negotiation of a plea agreement, that the United States and Colombia stood hand-in-hand, prosecuting and benefitting from Mr. Mancuso's substantial acceptance of responsibility.

The Court has asked several times as to whether Mr. Mancuso will have to serve an additional time in Colombia pursuant to the sentence imposed under the Justice & Peace Act.  *See*, Transcript of April 1, 2015 Sentencing Hearing, Pages 27-30.  It is the Defendant's position that in at least one case the courts have refused to recognize time served in the United States as part of the Colombian sentence.  *See*, Defendant's Exhibit No. 5, Judgment of Supreme Court of Justice, Criminal Appeal *re* Credit for Time Served in the United States.  The government, on the other hand, argues that this issue has not been resolved and, therefore, the Court should disregard whether the Colombian authorities will give Mr. Mancuso credit for the time served in the United States towards the Colombian sentence.  *See*, Government's Sentencing Memorandum, Page 25.[8]  This is an important issue since it potentially means that Mr. Mancuso will have to serve an additional consecutive 8-years following the expiration of the U.S. sentence.

---

[8] In its *Sentencing Memorandum*, the government states, in part, that "by virtue of his cooperation in Colombia, the defendant has placed himself in a position to receive a very substantial sentencing benefit in Colombia — to have his sentencing exposure in Colombia, for his separate Colombia-based Justice and Peace crimes, reduced from a sentence in excess of 400 months confinement to a sentence of no more than eight years Confinement." *Id.* at 25.  It noted further that "[a]ssessment of the defendant's sentencing exposure in Colombia is no simple matter, as the defendant has many criminal cases in Colombia and it is far from clear what his ultimate sentence in Colombia will be. Will the defendant ultimately face only eight years confinement in Colombia, or will he earn the sentencing benefits of the Justice and Peace law only for some but not all of his criminal cases? And if his ultimate sentence is only eight years, will it run *concurrently or consecutively* to the time he has already served in the United States? These are questions that may take years to sort out by the appropriate Colombian authorities." *Id.* (emphasis added).

The government's efforts to disregard the implications of this issue are in direct conflict with the position taken in the plea agreement.  *See*, Plea Agreement, ¶36.[9]  There, the government agreed that it would have no objection if the Colombian sentence were served in the United States.  By implication, the government acquiesced to a concurrent sentence in both cases.  The government's efforts to disregard the implication of this issue are also in direct conflict with the position taken during the April 1, 2015 Sentencing Hearing, wherein the government stated that it would not oppose the Court's imposition of a concurrent sentence.[10]  *See*, Transcript of April 1, 2015 Sentencing Hearing, 31:24-25; 30:1-10.   Rather, it would "honor the promises [] made in the plea agreement."  *See*, Transcript of April 1, 2015 Sentencing Hearing, 30:5-10

Although the United States Courts cannot bind the Colombian authorities, they can consider the intention of the parties in resolving the uncertainty regarding Colombian credit for the time served in the United States.  In Mr. Mancuso's case, the spirit of the negotiations and the promises made in

---

[9] Paragraph 36 of the *Plea Agreement* states: "The parties understand that if `the Defendant fulfills his obligations under the Justice and Peace Act and is sentenced pursuant to the Justice and Peace Act, per Article 30 of the Justice and Peace Act, 'the sentence can be served in a country other than Colombia.' If the Defendant and the Colombian government agree that the Defendant can serve his sentence imposed under the Justice and Peace Act in the United States, the government will not object to the Defendant serving his Colombian sentence concurrent to the` sentence imposed in this case.  Nothing in this provision allows the Defendant to serve any part of a Colombian sentence that would result in his imprisonment in the United States beyond the completion date of his United States sentence."  Plea Agreement, ¶ 36.

[10] *See*, Transcript of April 1, 2015 Sentencing Hearing at 31:24-25; and 30:1-10:  THE COURT: Okay. Then there are more things pending? MR. LAYMON: Right. So we know, Your Honor, is Mr. Mancuso is pending other prosecutions in Colombia for other criminal acts committed in Colombia that would be covered by the Justice and Peace program. You heard the witnesses testify that presumably because he has been deemed eligible for Justice and Peace benefits that these other sentences will also receive the alternative eight year sentence. You also heard them say they would all be concurrent with one another in the sense that there would be one universal eight year sentence. THE COURT: How does it relate to what happens to him here? MR. LAYMON: You also heard the witnesses testify that in their opinion he could get credit for time served here in the United States on his Colombian sentence. But I think, as they honestly admitted, they were not 100 percent certain that that would be the case. That was their opinion that he would. THE COURT: So it is an unknown. I can't make assumptions one way or another whether he serves another eight years down there or not. But he has his deal down there, whatever it turns out to be. **But you are not going to oppose concurrent. But I can remain silent on the issue. MR. LAYMON: Correct, you could, Your Honor**. *See*, Transcript of April 1, 2015 Sentencing Hearing, 29:4-25; 30:1-4 (emphasis added).

the plea agreement were that the United States would not oppose a concurrent, as opposed to a consecutive, sentence. As the Court correctly noted during Mr. Mancuso's change of plea hearing, "[n]ow, they added a new paragraph 36, which allows your sentence under the Justice and Peace Act to be served in the United States.  And the U.S. will not object to you serving your sentence under the Justice and Peace Act concurrently with any sentence imposed in this case.  So they can be served at the same time.  Is that clear?."  *See*, Transcript of Change of Plea, at 30:10-15.

## Legal Authority

The right to enforce a plea agreement is well-settled.  In *Santobello v. New York*, 404 U.S. 257 (1971), the Supreme Court held:  "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 262.  The Court outlined two remedies available to rectify the government's breach of a plea agreement:  (1) rescission of the agreement through withdrawal of the guilty plea, or (2) specific performance of the agreement.  404 U.S. at 263.  *See also Puckett v. United States*, 556 U.S. 129, 137, (2009).  "[A] breach does not cause the guilty plea, when entered, to have been unknowing or involuntary.  It is precisely *because* the plea was knowing and voluntary (and hence valid) that the Government is obligated to uphold its side of the bargain." *Puckett*, 556 U.S. at 137-38 (emphasis in original).  *See also United States v. Franco-Lopez*, 312 F.3d 984, 989 (9th Cir. 2002) ("[A] plea bargain may be enforced through specific performance [citations] or the defendant may be permitted to withdraw her guilty plea [citations].").  Here, Mr. Mancuso has performed his plea agreement obligations.  Thus, he seeks specific performance of the government's promises to him.

Plea agreements are contractual by nature and are measured by contract law standards. *See*, *United States v. Wood*, 378 F.3d 342 (4th Cir. 2004); *United States v. Franco-Lopez*, 312 F.3d 984 (9th

Cir. 2002); *United States v. Trapp*, 257 F.3d 1053, 1056 (9th Cir.2001). The courts enforce the literal terms of the plea agreement, *United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir.1999), but "construe ambiguities in favor of the defendant," *United States v. Quach*, 302 F.3d 1096, 1100-01 (9th Cir.2002), ordinarily placing on the government "responsibility for any lack of clarity," *United States v. Anderson*, 970 F.2d 602, 607 (9th Cir.1992), as amended 990 F.2d 1163 (9th Cir.1993). In the present case and in construing the agreement, we must first determine what Mr. Mancuso reasonably believed to be the terms of the plea agreement at the time of the plea. The government sought to incentivize Mr. Mancuso to disclose details of all AUC related crimes and the identities of their accomplices in the military, government, and national and foreign businesses. Any ambiguity regarding the extent to which Mr. Mancuso should receive benefits for his cooperation with Colombia under §5K1.1 or under a specific recommendation pursuant to 3553(a) should be resolved in favor of an interpretation that is consistent with the overall objectives of the plea agreement. For instance, United States cooperation with Colombian investigations promoted US foreign policy goals to improve accountability and strengthening the rule of law in Colombia. Pursuant to the plea agreement, Mr. Mancuso had every reason to rely upon the government's promise that a recommendation for a sentence reduction would be based upon his cooperation in cleansing Colombian institutions.

With respect to DOJ Attorney Robert Spelke's emails either clarifying or amending the plea agreement, it is Mr. Mancuso's position that they are now binding upon the government. Courts have held that a court or government representation can modify the terms of a written plea agreement. For instance, the Ninth Circuit held that a district court's oral representations at a sentencing hearing changed the content of a plea agreement. *See*, *United States v. Buchanan*, 59 F.3d 914, 917–18 (9th Cir.1995). In *Buchanon*, the district court advised the defendant at sentencing that he had a right to appeal the sentence. Id. at 917. However, the defendant waived his right to appeal in the plea

agreement. Id. at 916. On appeal, the Ninth Circuit held that the "the district court's oral pronouncement controls and the plea agreement waiver is not enforceable" given "the district court judge's clear statements at sentencing, the defendant's assertion of understanding, and the prosecution's failure to object...." Id. at 918. Although the circumstances in *Buchanon* differ from those in the instant case, *Buchanon* indicates that the terms of written plea agreement may be altered by the subsequent conduct of the Court and the parties.

Other circuits have held that parties may modify a written plea agreement through their conduct at a subsequent hearing. In *United States v. Martin*, the Fourth Circuit held that, although the plea agreement did not require the government to move for a downward departure, the government modified the plea agreement by promising to make a substantial assistance motion to reward the defendant for his assistance. 25 F.3d 211, 217 (4th Cir.1994) ("The government's commitment to make a substantial assistance motion to reward Martin for his presentence substantial assistance was tantamount to and the equivalent of a modification of the plea agreement, albeit an oral one."). The Fourth Circuit held that the government was obligated to move for a downward departure in order to fulfill its promise of rewarding defendant for his cooperation prior to sentencing, because a motion for downward departure was the only way to reward the defendant for his cooperation. Id. *Martin* indicates that the government can modify a plea agreement by its conduct.

Likewise, in *United States v. Wood*, the Fourth Circuit held that a written plea agreement barring the defendant from challenging the amount of drugs confiscated was orally modified at the plea hearing. 378 F.3d 342, 349–50 (4th Cir.2004). Relying on *Martin*, the court held that "Government statements can modify a plea agreement even after the district court accepts it." Id. at 349. The Fourth Circuit held that the district court's misrepresentation of the agreement and the government's acquiescence to the court's interpretation of the agreement constituted an oral modification of the

plea agreement. Id. at 349–50. Thus, courts have held that the government can orally modify a written plea agreement in subsequent hearings.

In this case, the record indicates that the government and Mr. Mancuso intended to modify or explain the terms of the written plea agreement through the emails that were exchanged. These emails exchanges specifically outline the mutual responsibilities between the parties. For instance, the government stated that the plea agreement requires Mr. Mancuso's complete attendance in all proceedings, not just the Justice and Peace Act. See, infra, FNA, email correspondence May 30, 2010. In exchange thereto the government unequivocally assured Mr. Mancuso that he would receive a recommendation for a reduction in non-U.S. cases. Here, the government has made a 35 percent sentence reduction recommendation under §5K1.1 solely for his assistance in U.S. related cases. There has not been a recommendation for his assistance in non-U.S. cases, including his public testimony against politicians and law enforcement personnel in Colombian. The government has a heighted responsibility which extends to all matters related to the plea agreement. *Wood*, at 348. This responsibility can only be discharged if the government makes an independent recommendation for a sentence reduction in non-U.S. cases. The mere fact that Mr. Spelke is no longer the DOJ attorney assigned to the case, does not excuse any subsequent attorney or administration from fulfilling the promise that were made in the past.

Now, after cooperation is no longer necessary, and sentencing has arrived, the government is downplaying and precluding Mr. Mancuso's effort at cooperation with Colombian law enforcement and prosecutors. The government is partitioning cooperation for U.S. and Colombian matters and ignoring the real benefit received as a direct result of Mr. Mancuso's cooperation. The government's position is inconsistent with the plea negotiations, the plain language of the plea agreement, and in detriment to the reliance placed on these negotiations by Mr. Mancuso.

## Defendant's Requested Relief [11]

This Court should order the government to perform its Plea Agreement obligations. Specifically, require the government to adequately review and recognize Mr. Mancuso's cooperation with Colombian authorities as that cooperation benefits the United States and thereby should appropriately be considered in the government's U.S.S.G. §5K1.1 motion for guideline reduction.

In addition, Mr. Mancuso respectfully requests that the Court order the government to make an independent recommendation for reduction of sentence based upon Mr. Mancuso's cooperation against high ranking officials in Colombian and related cases as was promised through written assurances incorporated in emails exchanged with counsel for Mr. Mancuso.

Finally, given the uncertainty as to whether Mr. Mancuso will receive credit towards his Colombian sentence for time served in the United States, this court should construe ambiguities in favor of a lesser sentence for Mr. Mancuso, thus placing on the government the responsibility for any lack of clarity.

**WHEREFORE**, Mr. Mancuso respectfully requests that his motion be granted and that these important conditions of his Plea Agreement be enforced.

Respectfully submitted,

By: /s/ Joaquin Perez        /
JOAQUIN PEREZ, ESQ.
DC Bar: 989889
6780 Coral Way
Miami, Florida 33155
(o) (305) 261-4000
(f) (305) 662-8715

---

[11] As in any other breach of contract situation, to say that one party breached the contract is not to ascribe to that party bad faith. It is precisely because the parties to a contract do not always agree about the contract's meaning that courts are enlisted in interpreting them. That we invariably end up disagreeing with one party's interpretation or the other's is not to ascribe a failure to act in good faith to the party with whom we disagree. *See also*, *United States v. Franco-Lopez, supra*, at 994, fn. 5.

12

### CERTIFICATE OF SERVICE

I hereby certify that, on this 21st day of April, 2015, I caused a true and correct copy of the

foregoing to be served electronically by means of the Court's ECF system to all counsel of record.


<u>        /s/Joaquin Perez          </u>
JOAQUIN PEREZ