**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Criminal No. 02-388-02 (ESH)** |
| | : | |
| | : | |
| **SALVATORE MANCUSO-GOMEZ** | : | |
| a/k/a "El Mono," | : | |
| a/k/a "Santander Lozada," | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO**
**ENFORCE PLEA AGREEMENT**

        Comes the United States, by and through its attorneys, and responds to the defendant's

Motion to Enforce Plea Agreement, filed on April 21, 2015. The motion should be denied.

**I.   INTRODUCTION**

        Defendant raises three issues. First, the defendant claims that the government violated the

plea agreement by failing to adequately credit the defendant, in the government's 5K1.1 motion,

for the assistance provided by the defendant in the conviction of intelligence officials in Colombia.

Second, the defendant claims that he was induced after his plea of guilty, through assurances

contained in emails from Robert Spelke, then a prosecutor with the Department of Justice, to

cooperate with Colombian authorities in investigations of high ranking Colombia officials.

Defendant claims he was promised in the emails that the government would, in exchange for his

cooperation, make an additional recommendation for a downward departure independent of and in

addition to any 5K1.1 recommendation. Third, the defendant argues that the government has

breached paragraph 36 of the plea agreement, which concerns the circumstance under which the

defendant's sentence(s), which may be imposed pursuant to Colombia's Justice and Peace Act, can

run concurrently to his sentence imposed in the United States. The defendant specifically requests that the District Court require the government to recommend that the sentence in the United States case run concurrently with the defendant's sentence(s) in Colombia. These claims are without merit and should be denied.

In the context of plea agreements, the defendant bears the burden of proving that an agreement has been breached. *United States v. Kilroy,* 27 F.3d 679, 684 (D.C. Cir. 1994). The defendant has not born the burden of proving that the plea agreement has been breached.

## II.   DEFENDANT ALLEGES THREE BREACHES OF THE PLEA AGREEMENT

### A.   The government did not breach the plea agreement by declining to give the defendant credit for assistance in certain Colombian cases

The defendant first claims that the government breached the plea agreement by failing to credit the defendant, pursuant to U.S.S.G. Section 5K1.1, with the assistance he provided in successful Colombian prosecutions of Colombian intelligence officials. Specifically, defendant argues that the assistance he provided in the investigation and prosecution of the head of Colombia's counter intelligence agency, known by its Spanish initials as "DAS,"[1]  directly benefitted both the United States and Colombia, and accordingly, that assistance should have been considered as part of the government's 5K1.1 assessment. Therefore, argues the defendant, the government's recommendation of a 35% sentence reduction is too low and should be increased to avoid a breach of the plea agreement. In other words, the defendant argues that the District Court should determine what constitutes substantial assistance for the purpose of *filing* a motion for downward departure pursuant to Section 5K1.1, and should order the government to recommend a greater percentage reduction.        .

---

[1]  In defendant's motion at page four, defendant argues that his testimony against the former director of DAS, as well as other unidentified "high ranking police and military officials," directly benefitted the United States.   As the defendant mentions specifically only the former director of DAS, the government will limit its response to him.

The defendant's claim fails for three reasons. First, the plea agreement gives the government the sole discretion to determine whether to file a 5K1.1 motion, and that discretion was exercised properly in the instant case. Second, the District Court has no authority in the instant case to review the government's decision. And third, the assistance provided by the defendant in the DAS cases did not result in prosecutions in the United States and did not directly or substantially benefit the United States, so that assistance to the government of Colombia in the DAS case was properly omitted from 5K1.1 consideration.

### 1. The Department of Justice had sole discretion to determine whether to file a 5K1.1 motion and that discretion was exercised properly

The plea agreement makes clear that the government alone determines what constitutes substantial assistance for the purpose of filing a motion for downward departure pursuant to U.S.S.G Section 5K1.1. There are three pertinent provisions of the plea agreement which define and describe "substantial assistance." Paragraph 14(B), page 6 of the plea agreement provides "only information that proves useful to investigations and prosecutions on behalf of the United States government will be considered for substantial assistance." Paragraph 15, page 8 of the plea agreement notes that "the determination of "substantial assistance" pursuant to Section 5K1.1 … is within the sole discretion of the United States Department of Justice and will be based solely on information and other assistance provided that concerns potential defendants and offenses that may be prosecuted in the United States." Note 4 to paragraph 15 provides that the defendant will not receive a "double benefit" for the same information provided to both Colombian and United States authorities, but that the defendant will receive credit for information that "benefits both the United States and Colombian authorities." None of the information provided by the defendant related to Colombian officials resulted in prosecutions against them in the United States.

There is nothing in the plea agreement which specifically requires the government to consider the DAS case in assessing whether to file a 5K1.1 motion and there is nothing in the plea agreement which specifically requires the government to include the DAS case in its 5K1.1 motion. In the opinion of the United States, the DAS case did not directly or substantially benefit the United States and thus the DAS case was not considered by the government in determining whether to file a 5K1.1 motion.   The DAS cases are included in the government's sentencing memorandum as information the District Court is entitled to consider for sentencing pursuant to Title 18, United States Code, Section 3553(a). But the plea agreement makes it clear that this determination of "substantial assistance" is within the sole discretion of the United States, and the defendant cannot complain about the exercise of the government's discretion simply because he disagrees with the government's judgment.

### 2.   The District Court has no authority in the instant case to review the government's 5K1.1 decision

The defendant seeks to have the District Court review the government's exercise of its discretion in determining substantial assistance. However, the District Court has no authority to conduct an abuse of discretion or bad faith review of the government's 5K1.1 decision absent either (1) a plea agreement which requires the government to file a 5K1.1 motion or (2) "a substantial threshold showing that the government's decision [pursuant to 5K1.1] was based on an unconstitutional motive or, improbably, unconstitutional in the sense the decision was not rationally related to a legitimate government end…." *United States v. White,* 71 F.3d 920, 927 (D.C. Cir. 1995), citing *Wade v. United States,* 504 U.S. 181, 185-86 ((1992) (no violation of due process where government declined to file 5K1.1 motion, even if defendant's assistance was arguably substantial, though incomplete.)

In the instant case, the plea agreement did not require the government to file a 5K1.1 motion, though in fact, the government did file a 5K1.1 motion, nor does the defendant allege any unconstitutional motive.   In fact, the defendant acknowledged in his motion that he was not ascribing to the government any bad faith or failure to act in good faith, but rather noted that sometimes the parties to a contract simply disagree about a contract's meaning. (Motion, page 12, n.9.)   The defendant cites no authority for the rather extraordinary claim that the District Court has the authority to review the government's substantial assistance determination where the government, acting without bad faith, files a sentencing memorandum that, although referencing the information (here, the DAS cases), does not consider it substantial assistance that directly or substantially assisted the United States.

### 3.   The DAS case did not directly or substantially benefit the United States and the defendant is not entitled to 5K1.1 consideration for assistance in that case

Given that the plea agreement vests the government with sole discretion in the filing of a 5K1.1 motion and given that the District Court has no authority here to review the government's decision, the District Court need not address the defendant's claim that his assistance in the DAS cases amounted to information that benefitted both the United States and Colombian authorities, such that he should be provided sentencing credit pursuant to Section 5K1.1.

However, a brief summary of the DAS case shows that the government acted in good faith in determining that the defendant's assistance in the DAS case did not warrant consideration in the government's determination concerning a 5K1.1 motion. Jorge Noguera served as DAS director from September 2002 to October 2005, left that position in October 2005, and in 2006 was appointed by the Colombian president to serve as consul to Italy. Noguera was charged and arrested in 2007 with crimes involving his support of the AUC, was convicted in 2011 and

sentenced to 25 years.    The charges and the conviction were primarily based on the testimony of

Rafael Garcia Torres, a former information technology official at DAS. The defendant (Mancuso)

testified in very general terms against Noguera in 2010. The defendant's testimony was hearsay

and touched on intelligence that the AUC had received from DAS. Mancuso did testify about one

particular incident in which he asked a sub-commander under Rodrigo Tovar-Pupo to determine if

a suspect was a FARC sympathizer, and this sub-commander said he knew Noguera and could get

that information. Mancuso never claimed to have spoken to Noguera. The Colombian Supreme

Court decision in 2011 that announced Noguera's conviction did cite Mancuso's testimony, but

noted that it was hearsay and that there were many other witnesses against Noguera, principally

Garcia Torres.

The government has acknowledged in its sentencing memorandum that the defendant

assisted the Colombian government in acquiring convictions of Noguera and several other DAS

officials.    However, the defendant did not provide any information or assistance which led to the

removal of Noguera in 2005, nor any other DAS official at any time. Noguera and the others were

removed from DAS before the defendant testified in their cases and the removals were based on

other evidence. Moreover, as noted above, this investigation and prosecution occurred in

Colombia, not in or by the United States.

As the government has noted, consistent with the plea agreement, the government has

informed the District Court about the defendant's assistance in the DAS case, which the District

Court may consider in evaluating the history and characteristics of the defendant pursuant to

Section 3553(a)(1).    The defendant's assistance in the DAS case, though helpful to the

Colombian government, did not advance United States prosecutions, and was thus properly

excluded from 5K1.1 consideration. The defendant has argued that the United States did "benefit"

from the removal and prosecution of the DAS officials, because United States law enforcement and intelligence officials need to be able to trust their Colombian counterparts. This may well be so in a broad and general sense, but there is no evidence that the DAS officials sabotaged United States efforts or that the defendant provided information which led to the direct protection of ongoing United States investigations.

### B.   The plea agreement was not modified by the Spelke emails, so the government did not breach the plea agreement by declining to recommend an additional downward departure for foreign assistance

The defendant's second claim is that the government modified the plea agreement, after the defendant plead guilty, and promised to recommend a downward departure in addition to the Section 5K1.1 recommendation for the defendant's "testimony against high ranking officials in Colombia … including political and law enforcement corruption." (Motion, p.4)   Specifically, the defendant argues that the government modified the plea agreement after the guilty plea in emails sent by the prosecutor to the defense counsel.

Long after the defendant plead guilty, in a series of emails between Mr. Spelke and the defendant's counsel, beginning on April 13, 2010 and continuing to May 3, 2010, defendant's counsel pressed his point that the defendant's cooperation with the Colombian Supreme Court in investigations of elected officials merited 5K1.1 consideration or additional sentencing consideration. This was counsel's argument in an email to Mr. Spelke on April 13, 2010.   Mr. Spelke replied via email on April 16, 2010 that the defendant's assistance in the cases of the elected officials would be presented to the District Court for sentencing consideration pursuant to Section 3553(a)(1), and not pursuant to Section 5K1.1.   In an email dated April 26, 2010, Mr. Spelke further responded to counsel's concerns by noting that 5K1.1 was limited to information that assists in United States prosecutions but that Colombian cooperation would be made known to

the court pursuant to 3553(a). Mr. Spelke specifically addressed the defendant's request that the government make two sentencing recommendations, a 5K recommendation and an additional 3553(a) recommendation. Mr. Spelke opined that the plea agreement "may allow for a further reduction below the 5K reduced sentencing guideline…. If appropriate, the government may theoretically make a recommendation to the Court that is lower than the departure requested under its theoretical 5K motion." In an email dated April 28, 2010, defense counsel responded, pressing his request for the government to make two sentencing recommendations, one pursuant to 5K1.1 and an additional departure pursuant to 3553(a). Mr. Spelke replied in an email on April 30, 2010, noting that there were two categories in which the defendant could cooperate, information that benefits the United States directly and information that does not benefit cases in the United States. Mr. Spelke concluded with this sentence: "Assuming Mr. Mancuso successfully completes his cooperation in all proceedings, the United States will of course present to the sentencing Court the significance of Mr. Mancuso's testimony before the Colombian Supreme Court as part of our recommendation for a reduction in non-U.S cases."

The defendant's claim in regards to these emails fails for three reasons. First, the plea agreement provided for modification of the agreement, and the alleged modification did not conform to the requirement of the plea agreement. Second, there is no cognizable breach of an alleged promise made after the defendant plead guilty, as only a promise which induced the guilty plea can be considered in determining whether the government breached an agreement. And third, the Spelke emails did not in fact modify the plea agreement.

**1. The alleged modification was not done in accordance with the plea agreement and therefore did not modify the existing plea agreement**

The plea agreement itself provided the mechanism for further understandings or promises,

or changes to the plea agreement. In paragraph 37, page 19 of the plea agreement, the parties

agreed that "[n]o other agreements, understandings, promises, representations or conditions or

changes to this Plea Agreement may be made or entered into unless in writing and signed by the

parties." In addition, paragraph 37 of the plea agreement contained an integration clause, which

noted that no other agreements existed other than those contained in the plea agreement. The

integration clause means that the parties had no other understanding on how to modify the plea

agreement except as set out in paragraph 37. *See United States v. Ahn,* 231 F.3d 26, 36-37 (D.C.

Cir. 2000) (defendant argued that government made an implied promise to keep his criminal

proceedings secret, but integration clause in plea agreement was strong evidence that no implied

promises existed.)

    The emails presented by the defendant are variously characterized by the defendant as a

"promise" ("the government promised", Motion, page 4) or as "clarifying or amending the plea

agreement" (Motion, page 9).   Thus, according to the defendant, the emails amount to an

"understanding" of the plea agreement, or a new "promise", or a "change" in the plea agreement.

Regardless though of how the emails are characterized, the emails do not conform to the

requirement of paragraph 37. The emails may have been in writing, but the understanding, or

promise, or change was not reduced to writing and signed by the parties. The terms of the plea

agreement bind the defendant as well as the government, and the defendant cannot complain when

he himself failed to conform to the requirements of the plea agreement to which he voluntarily and

knowingly agreed. *United States v. Leach,* 562 F.3d 930, 935-36 (8th Cir. 2009) ("a defendant

-quite as much as the government –is bound by a plea agreement that recites that it is a complete

statement of the parties understanding"); *United States v. Teeter,* 257 F.3d 14, 28 (1st Cir. 2001)

("We have analogized plea agreements to contracts, binding upon the prosecution and the defense

alike.")

## 2. There is a split in the Circuit Courts as to whether a promise which did not induce a guilty plea can be the subject of a breach by the government but the weight of authority is that only a promise which induced a guilty plea is relevant

The defendant argues that "[c]ourts have held that a court or government representation can modify the terms of a written plea agreement" after the plea agreement is entered into by the parties. (Motion, page 9.) However, apart from a modification to a plea agreement that is knowingly and voluntarily agreed to by the parties in accordance with the terms of the existing plea agreement, which is not the case here, it is far from clear that the defendant has a cognizable claim when he alleges that the government breached a promise which was made after the guilty plea and which did not induce the guilty plea.

When a prosecutor secures a plea with a promise, the promise must be fulfilled. *Santobello v. New York,* 404 U.S. 257, 262 (1971). *Santobello* is the foundation for determining whether the government has made a promise which has been breached, and *Santobello's* focus was on promises which induced a guilty plea. In considering whether a plea agreement has been breached, the courts look to principles of contract law. *United States v. Jones,* 58 F.3d 688, 691 (D.C. Cir. 1995). Plea agreements, like contracts, are accompanied by an implied obligation of good faith and fair dealing. *Jones,* 58 F.3d at 692.

The defendant cites three cases for the proposition that a plea agreement can be modified, either by the government or by the district court and government acting together, after the signing of the plea agreement. A close examination of the three cases reveals the flaws in defendant's argument and his ultimate failure to satisfy the guiding principle set out in *Santobello.* The defendant cites *United States v. Buchanan,* 59 F.3d 914, 917-18 (9th Cir. 1995), for the proposition that the "terms of [a] written plea agreement may be altered by the subsequent conduct of the

Court and the parties." This statement is not accurate and is not the holding of *Buchanan.* The 9th

Circuit held in *Buchanan* that a knowing and voluntary waiver in a plea agreement of the right to

appeal was unenforceable where the trial court instructed the defendant at two hearings after the

guilty plea that the defendant had a right to appeal sentencing findings. *Buchanan,* 59 F.3d at

917-18.    The 9th Circuit was concerned that "[l]itigants need to be able to trust the oral

pronouncements of district court judges." *Id.* at 918.    Given that the district court judge twice

advised the defendant that he had the right to appeal, that the defendant understood what the judge

said, and that the prosecutor failed to object, the circuit court declined to enforce the plea waiver.

*Id.*    Thus, *Buchanan* does not stand for the proposition that a plea agreement can be modified by

the court's pronouncements, coupled with the prosecution's silence.

    Further, other circuits have criticized the reasoning and holding in *Buchanan* and have

declined to follow it.    *See United States v. Teeter,* 257 F.3d 14, 25 (1st Cir. 2001); *United States v.*

*Fleming,* 239 F.3d 761, 763 (6th Cir. 2001); and *United States v. Michelsen,* 141 F.3d 867, 872 (8th

cir. 1998) (any statement by the court at sentencing could not have affected the defendant's

decision to plead guilty and waive his appellate rights).    *Fleming* is illustrative. In his plea

agreement, Fleming waived his rights to appeal, was properly advised of the waiver by the court at

the guilty plea, but at sentencing the court erroneously advised him that he could appeal. The 6th

Circuit, rejecting the reasoning and result in *Buchanan,* concluded that the district court lacked

power to modify the plea agreement because the court cannot participate in the plea agreement

process. *Fleming*, 239 F.3d at 764-65.

    Defendant also relies on a pair of cases from the 4th Circuit, *United States v. Martin,* 25 F.3d

211, 217 (4th Cir. 1994) and *United States v. Wood,* 378 F3d 342, 349-50 (4th Cir. 2004).    In

*Martin,* the defendant plead guilty to drug offenses pursuant to a plea agreement which provided

that the government could in its sole discretion file a 5K1.1 motion.   *Id.* at 213.   Martin

cooperated extensively with the government, but at sentencing the prosecutor declined to file a

5K1.1 motion, stating that though Martin had provided substantial assistance, his cooperation was

incomplete and the government intended to file a motion pursuant to Rule 35, F.R.Cr.P.   *Id.* at

213-14.   However, Martin provided no more assistance after the plea, the government filed a Rule

35 motion, but the district court ruled it did not have the authority to grant a Rule 35 motion

because the defendant's assistance all occurred before sentencing. *Id.* at 215-16.   The 4th Circuit

reasoned that the government's commitment at sentencing to reward Martin for his presentence

substantial assistance modified the plea agreement, even though the modification was an oral one,

and held that the failure to comply with the modified plea agreement deprived Martin of due

process. *Id.* at 217. The court remanded the case with instruction that Martin was entitled to

specific performance of the government's promise. *Id.* In *Wood,* a case similar to *Martin,* the 4th

Circuit concluded that the terms of a plea agreement were modified by the district court's

mischaracterization of a material term of the agreement (ability to challenge drug quantity),

coupled with the government's failure to object or clarify, where the defendant demonstrated he

would not have plead guilty without the unlimited ability to challenge drug quantity. *Id.* at 347-48,

349-50. Wood plead guilty to a drug offense and the plea agreement limited his ability to contest

drug quantity. *Id.* at 345. At the change of plea hearing, the district court repeatedly told Wood that

he could challenge drug quantity, and neither the court nor the prosecution described any limitation

to Wood's ability to challenge drug quantity. *Id.* at 346. The *Wood* court distinguished *Buchanan,*

noting that other circuit courts had criticized *Buchanan,* because the court's misstatements to

Wood occurred at the plea colloquy and not at a later hearing, and therefore formed the basis of the

defendant Wood's understanding. *Id.* at 349, n. 4.

The D.C. Circuit has declined to follow *Martin. See United States v. White,* 71 F.3d 920, 925-27 (D.C. Cir 1995). Other circuits have not followed the lead of the 4th Circuit and have held that only where the government has breached a promise which induced a guilty plea can the defendant seek relief. *See United States v. Leach,* 562 F.3d 930, 935-37 (8th Cir. 2009) (defendant claimed government made an oral promise to recommend the bottom of the guideline range, but if the promise was made after the guilty plea, the promise could not have induced the plea and there is no cognizable breach); *United States v. Hart,* 397 F.3d 643, 647 (8th Cir. 2005) (an alleged promise to file a 5K1.1 motion, allegedly made between sentencing and resentencing, did not induce the guilty plea and could not amount to a cognizable breach); *United States v. Resto,* 74 F.3d 22, 26-27 (2nd Cir. 1996) (distinguishing *Martin* and finding that prosecutor's statement at pre-sentencing hearing that "we are ready at this time to give him a 5K letter" did not purport to change the plea agreement and was no more than the current assessment of the defendant's situation); *United States v. Quan,* 789 F.2d 711, 713 (9th Cir. 1986) (alleged promise to release defendant from custody if he cooperated, allegedly made a few weeks after the guilty plea, was irrelevant because the alleged promise did not induce the guilty plea).

The weight of authority appears to be that only breach of a promise which induced a guilty plea is relevant in determining whether the government has breached the plea agreement. The main case relied on by the defendant, *United States v. Wood,* stands for the same proposition, as the alleged promise to Wood was made at the guilty plea hearing. In the instant case, the defendant plead guilty long before the series of emails were exchanged between Mr. Spelke and defense counsel, therefore the defendant was not induced to plead guilty by any representations in the emails. Thus, he cannot properly claim that the government made a promise to him that he relied on at the time of his guilty plea.

13

**3. The Spelke emails did not modify the plea agreement**

Even if the District Court were to find that the Spelke emails conformed to the requirements of paragraph 37 of the plea agreement, and even if the District Court found that the weight of authority supported the possibility of a plea agreement modification after the plea agreement was accepted by the court, the Spelke emails did not modify the plea agreement. Rather, the emails were consistent with the plea agreement and created no other promise or understanding, and did not change the plea agreement.

As the email correspondence shows, Mr. Spelke acknowledged the "theoretical" possibility that the plea agreement permitted the government to ask the District Court for an additional sentence departure beyond the government's 5K1.1 recommendation.   Taking the emails in context, nothing that Mr. Spelke wrote could be construed as a promise to the defendant to recommend a sentence departure based on his assistance in the cases of elected Colombian officials. No such promise was made in the plea agreement, and no such promise was made by Mr. Spelke.

**C.   The government did not breach the promise in the plea agreement to not object to the defendant serving his Colombian sentence concurrent to the sentence imposed in the instant case.**

In his third and last issue, the defendant claims that the government has breached paragraph 36 of the plea agreement. Underlying the terms of paragraph 36, page 18 is the reality that the defendant was and is pending criminal charges in Colombia, and if he was convicted of those charges and if he was found to be eligible for the benefits of the Colombian Justice and Peace Program, then he would receive an alternate sentence of eight years. In fact, in 2014, the defendant was found guilty by two different criminal courts in Colombia and sentenced to more than 30 years in prison in each case; however, those sentences were each reduced to eight years because he was

eligible for Justice and Peace benefits. The parties anticipated this eventuality and agreed to the terms set out in paragraph 36. Paragraph 36 provides that the United States will not object to the defendant serving his eight year Colombian sentence in the United States at the same time he is serving a United States sentence, *if* the defendant and the Colombian government agree that the defendant can serve his Colombian sentence in the United States.   The government has not breached this paragraph. The government has stated to the District Court, and states here again, that it will comply with the terms of paragraph 36. Further, the government could not have breached paragraph 36 because the government's obligation to not object to the defendant serving his Colombian sentence concurrent to his United States sentence is conditioned on an event which has not occurred. That is, *if and when* the defendant and the Colombian government agree that he can serve his Colombian sentence in the United States, *then in that event* the government will not object as set out in paragraph 36.   As far as the government is aware, the defendant and the Colombian government have come to no agreement on whether he can serve his Colombian sentence in the United States.   The government has not attempted to persuade the Colombian government to agree with the defendant or to oppose the defendant on this issue, instead the government has remained neutral on whether the Colombian government should agree with the defendant to permit him to serve his sentence imposed under the Justice and Peace Act in the United States.   The question of whether the defendant can serve his Colombian sentence while also serving his United States sentence is a question to be resolved by the defendant and Colombia, another sovereign nation.

The defendant asks the District Court to direct the United States to recommend that the United States sentence and the Colombian sentence(s) run concurrently. The plea agreement does not require the United States to recommend (presumably to the Colombian government) that the

defendant's Colombian sentence run concurrently with his United States sentence. While the government must be held to the promises it made, it is not bound by those it did not make. *United States v. Ahn,* 231 F.3d 26, 37 (D.C. Cir. 2000) (government had not impliedly promised the defendant Ahn that his cooperation would be kept secret, and the government could not be required to uphold a promise it had not made.)

## **CONCLUSION**

The defendant bears the burden of proving that a plea agreement has been breached. *Kilroy,* 27 F.3d at 684. The defendant has not met his burden of proving that the government breached the plea agreement. Further, plea agreements are accompanied by an implied obligation of good faith and fair dealing. *Jones,* 58 F.3d at 692. The government has acted in good faith and has dealt fairly, though firmly, with the defendant. For the reasons set out, his motion should be denied.

Respectfully submitted,

Arthur Wyatt, Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

_____/s/_____

By: Paul W. Laymon, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
paul.laymon@usdoj.gov
202-330-1400

## <u>CERTIFICATE OF SERVICE</u>

A copy of this motion was mailed, via electronic mail, to counsel for defendant, Joaquin Perez, 6780 Coral Way, Miami, Florida, on April 30, 2015.    .

_____/s/_____
Paul W. Laymon